O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| BRENDA JOHNSON O/B/O DEVAA C. JOHNSON,<br><br>             Plaintiff,<br><br>        v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>             Defendant. | Case No. EDCV 07-01694-MLG<br><br>MEMORANDUM OPINION AND ORDER |

## I. Procedural and Factual History

Plaintiff Devaa Johnson ("Plaintiff") seeks judicial review of the Commissioner's final decision denying his application for Supplemental Security Income benefits ("SSI"). Plaintiff applied for SSI benefits on May 9, 2005 (Joint Stipulation ("Joint Stip.") at 2.) Plaintiff alleges disability beginning March 1, 2005 due to psychosis and a learning disorder. (Joint Stip. at 2). Plaintiff was born on February 20, 1992 and was 15 years old at the time of the administrative hearing. (Administrative Record ("AR") at 26).

A disability determination for individuals younger than eighteen

years of age requires three findings: (1) the claimant must not be performing substantial gainful work, 20 C.F.R. § 416.924(b); (2) the claimant's impairment, or combination of impairments, must be severe, 20 C.F.R. § 416.924(c); and (3) the claimant's impairment must meet, or be medically or functionally equal to, a listed impairment found in 20 C.F.R. Part 404, Subpart P, App. 1.  When the claimant's impairment(s) does not meet or equal an impairment(s) in the Listing, or does not meet the durational requirement, the claimant is determined not to be disabled. 20 C.F.R. § 416.924(d).

On November 29, 2005, Plaintiff's application was denied at the initial stage of the administrative process.  (AR at 14).  A de novo hearing was held on April 12, 2007, before Administrative Law Judge ("ALJ") William C. Thompson, Jr. (AR at 203-230).  Plaintiff, unrepresented by counsel, testified at the hearing, as did Plaintiff's mother, Brenda Cain. (Id.)  On July 3, 2007, the ALJ issued an unfavorable decision, denying SSI benefits. (AR at 14-20).  The ALJ found that Plaintiff's learning disorder is a medically determinable impairment. (AR at 17).  However, the ALJ found that Plaintiff did not have a "severe" impairment within the meaning of the Social Security regulations. (AR at 17); *see* 20 C.F.R. § 416.924(c). The ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, at any time from May 9, 2005 through the date of the decision. (AR at 20).  The Appeals Council denied Plaintiff's request for review on November 20, 2007. (AR at 158-161).

Plaintiff timely commenced this action for judicial review. Plaintiff alleges that the ALJ erred as follows: (1) by improperly rejecting the opinion of Plaintiff's treating physician; (2) by failing to properly consider the results of Plaintiff's individualized

2

education plan ("IEP"); (3) by failing to properly consider the severity of Plaintiff's mental impairment; (4) by failing to properly consider the lay witness statements of Plaintiff's mother; (5) by failing to fully develop the record; and (6) by failing to properly consider the type, dosage and side effects of Plaintiff's medication. (Joint Stip. at 3.) Plaintiff asks this Court to order an award of benefits, or, in the alternative, to remand for a new administrative hearing. (Joint Stip. at 19.)

## II. **Standard of Review**

The Court must uphold the Social Security Administration's disability determination unless it is not supported by substantial evidence or is based on legal error. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)(citing *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006)). Substantial evidence means more than a scintilla, but less than a preponderance; it is evidence that a reasonable person might accept as adequate to support a conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)(citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can support either affirming or reversing the ALJ's conclusion," the reviewing court "may not substitute [its] judgment for that of the ALJ." *Robbins*, 466 F.3d at 882.

//

**III. <u>Discussion and Analysis</u>**

    **A.   The ALJ Properly Considered Dr. Ross's Mental Status Examination**

Plaintiff asserts that the ALJ did not give sufficient weight to Dr. Craig Ross's mental examination report. (Joint Stp. at 3).  On March 17, 2005, Plaintiff was involuntarily hospitalized for an acute psychiatric episode, which included auditory hallucinations, delusions and suicidal thoughts. (AR at 153).  During his four-day stay at the hospital, Plaintiff's treating physician was Dr. Ross. (AR at 153). Dr. Ross diagnosed Plaintiff with major depressive disorder, single episode, severe with psychotic features, as well as substance abuse of alcohol and marijuana. (AR at 154).  Plaintiff was discharged from the hospital on March 21, 2005. (AR at 170).  Dr. Ross noted that Plaintiff's prognosis was "fair" and that Plaintiff's condition on discharge was "improved." (AR at 155). Follow-up treatment was recommended on an outpatient basis, but Dr. Ross did not provide any further treatment to Plaintiff after he was released from the hospital. (AR at 155).

The Court finds that the ALJ properly considered Plaintiff's March 2005 hospitalization report.  The ALJ noted that Plaintiff was "involuntarily hospitalized in March 2005 after reporting auditory hallucinations and threatening to harm himself." (AR at 18).  The ALJ specifically cited to the hospitalization report, which found that Plaintiff "did not have any prior mental health treatment," that "drug screening revealed the presence of marijuana and alcohol," and that Plaintiff had been "released from jail two weeks earlier on charges of grand theft auto." (Id.).

Plaintiff further contends that Dr. Ross was Plaintiff's treating

physician, and therefore greater weight should have been given to Dr. Ross's opinion than to the consulting and reviewing physicians' reports (Joint Stip. at 3-4). The Commissioner argues that Dr. Ross should not be considered a treating physician because he only treated Plaintiff for four days in March 2005 for a single, acute psychotic episode. (Joint Stip. at 4-5).

The ALJ gave proper weight to Dr. Ross's medical report. The ALJ should generally accord greater probative weight to a treating physician's opinion than to opinions from non-treating sources. See 20 C.F.R. § 404.1527(d)(2). The ALJ must give specific and legitimate reasons for rejecting a treating physician's opinion in favor of a non-treating physician's contradictory opinion. *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). However, the ALJ need not accept the opinion of any medical source, including a treating medical source, "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); accord *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). The factors to be considered by the adjudicator in determining the weight to give a medical opinion include: "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii); Orn, 495 F.3d at 631-33.

Applying these factors, it was reasonable for the ALJ not to accord conclusive weight to Dr. Ross's medical opinion. *See* 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii). Dr. Ross only treated Plaintiff for four days during a single, acute psychotic

episode. Dr. Ross had no previous treating relationship with Plaintiff as Plaintiff had no past psychiatric history. Further, Dr. Ross did not provide any follow-up care, but rather advised Plaintiff to seek outpatient services after discharge from the hospital. Given these facts, it was reasonable for the ALJ not to consider Dr. Ross a treating physician, and therefore not to give his opinion conclusive weight. Therefore, no relief is warranted on this issue.

### B. The ALJ Properly Considered the Results of the Individualized Education Plan

Plaintiff contends that the ALJ improperly disregarded an October 31, 2006 IEP assessment of Plaintiff, which was completed by the Moreno Valley Unified School District. (Joint Stp. at 6-7). The IEP was developed by a school administrator, a special education teacher and a school psychologist, in conjunction with Plaintiff and his mother. (AR at 141). The IEP indicated that Plaintiff "performs poorly in school and is well below his grade level." (Joint Stp. at 6). Plaintiff argues that the IEP should be considered to be the objective opinion of a treating physician because it was prepared in part by the "school psychiatrist,"[1] and therefore should have been given significant weight in determining the severity of Plaintiff's impairment. The Commissioner contends that, because the IEP is not a formal medical opinion, the ALJ properly gave the IEP relatively little probative weight.

The Court finds that the ALJ assigned appropriate weight to the October 31, 2006 IEP. First, the ALJ acknowledged that Plaintiff has a learning disability (AR at 18) and has had poor performance and

---

[1] Plaintiff misidentifies the school psychologist, Brad Rice, as a "school psychiatrist." (AR at 141).

6

behavioral problems at school (AR at 18-19). The ALJ considered the IEP as relevant factual evidence that Plaintiff displayed "inappropriate behavior at school." (AR at 19). Because the IEP was an educational report, prepared by the school district to assess Plaintiff's school performance, the ALJ properly did not give it the same weight as a medical opinion. *See* 20 C.F.R. § 416.927(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions."). Therefore, despite Plaintiff's contentions, the IEP was not a valid medical opinion, nor was the school psychologist a treating physician for purposes of determining whether Plaintiff is disabled under the Social Security regulations.

Further, the ALJ permissibly considered other evidence that contradicted Plaintiff's claim of a severe disability. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.")  For example, the ALJ cited a school evaluation conducted on May 31, 2005, which found that Plaintiff was a "likable student who was able to follow instructions," and also that Plaintiff was "independent in all areas of personal hygiene and grooming and [could] express his ideas clearly and age appropriately." (AR at 18, 50-51). The ALJ also considered a Social Security Administration Teacher Questionnaire, completed on June 7, 2005, in which Plaintiff's ninth grade teacher reported that Plaintiff "did not complete/attempt most assignments due to preoccupation with fatigue,

anger or appearing to be 'high'". (AR at 18, 67-73)

The ALJ also cited the psychiatric evaluation by the consulting psychiatrist, Dr. Khang Nguyen, which contradicted Plaintiff's claim that his mental impairments and learning disability were severe. (AR 19, 175-179). When Dr. Nguyen examined Plaintiff on September 23, 2005, he found that Plaintiff did not "show any abnormal, bizarre or psychotic behavior." (AR at 176). Dr. Nguyen further determined that Plaintiff's "affect is appropriate and unremarkable...he has no suicidal or homicidal ideation...[and] no looseness of association..., paranoid ideation, delusions, [or] auditory or visual hallucinations." (AR at 177). *See Orn*, 495 F.3d at 632 ("[W]hen an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence.").

As set forth above, the ALJ's decision to accord relatively little weight to the IEC was substantially supported by the evidence and not contrary to governing legal standards.

**C.  The ALJ's Determination that Plaintiff Did Not Have a Severe Mental Impairment Was Substantially Supported**

Plaintiff claims the ALJ erred by finding that Plaintiff's alleged mental disorder did not constitute a severe impairment. (Joint Stp. at 9). Plaintiff contends that the March 2005 hospitalization report by Dr. Ross and the October 31, 2006 IEP establish that Plaintiff has a severe mental impairment. (Id.) The Commissioner contends that the ALJ properly determined that Plaintiff's mental impairment was not severe by relying on the reports of the consulting and reviewing physicians, as well as other factual evidence. (Joint Stp. at 11-12).

A claimant for disability benefits has the burden of producing

evidence to demonstrate that he or she was disabled within the relevant time period. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The existence of a severe impairment is demonstrated when the evidence establishes more than a minimal effect on an individual's ability to do basic work activities. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1521(a), 416.921(a).[2] As detailed above, the ALJ reasonably accorded little weight to Dr. Ross's March 2005 report and the October 31, 2006 IEP, and instead adopted the opinion of Dr. Nguyen, who determined that Plaintiff's mental impairment was not severe. Further, the ALJ properly considered other evidence which contradicted Plaintiff's claim that he has a severe mental impairment, such as the assessment of the reviewing State Agency psychiatrist Dr. Williams (AR at 20-21, 175-184), and various other psychological and education assessments (AR at 19, 36, 37, 51, 117, 177). In addition, Plaintiff testified at the administrative hearing that he was not seeing a doctor or taking medication (AR 227), and his mother testified that he had not been taking any medication for at least seven months (AR 215).

    Plaintiff has not met his burden of producing evidence to show that he suffers from a severe mental impairment, rather than a behavioral problem. As set forth above, the ALJ's finding that Plaintiff did not have a severe mental impairment was substantially supported and not contrary to governing legal standards. Therefore,

---

[2] The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs", which include physical functions such as walking, standing, sitting, pushing, carrying; capacities for seeing, hearing and speaking; understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. § 404.1521(b).

no relief is warranted on this issue.

### D. The ALJ Gave Proper Weight to a Report Completed by Plaintiff's Mother

Plaintiff contends that the ALJ improperly rejected a report by Plaintiff's mother as not being credible. (Joint Stp. at 13-14). On December 15, 2005, Plaintiff's mother completed a "Disability Report - Appeal" form, claiming that Plaintiff's mental impairment had worsened since initially filing for SSI benefits on May 9, 2005. (AR at 74-80). Plaintiff's mother, as a non-medical source, is a lay witness who can provide testimony about Plaintiff's symptoms and limitations. *See Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "Lay *testimony* as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Appropriate reasons to reject the testimony of a family member include testimony unsupported by the medical record or other evidence and inconsistent testimony. *Lewis*, 236 F.3d at 512; *Dodrill*, 12 F.3d at 918-19. Unlike lay *testimony*, there is no controlling precedent requiring an ALJ to explicitly address *written* statements, such as the "Disability Report - Appeal" form in this case. Indeed, it is clear that an ALJ is not required to discuss all evidence in the record in detail. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

In giving little weight to Plaintiff's mother's written statements about the severity of Plaintiff's alleged mental impairment, the ALJ noted his reasons as follows:

> On December 15, 2005 Ms. Cain indicated in a statement to the

> Administration that the claimant was having auditory hallucinations, disorientation, and delusions (Exhibit 6E). She claimed that she had to care for all of his personal needs because he was weak and confused, and that he was having hallucinations on a daily basis. She claimed he had no activities because he could not get along with his own family, and that he stayed in his room most of the day. I give minimal weight to this evidence. I note that the claimant's mother appears to exaggerate the claimant's symptoms. While she alleged that he continued to experience hallucinations and was unable to perform self care, the school records dated less than two months earlier indicate he was independent in health care and no mention is made of psychosis (Exhibit 11E). I further note that the claimant currently lives with Ms. Cain, and thus Ms. Cain stands to gain financially should the claimant be found disabled. Finally, given the close relationship, it is possible that Ms. Cain was influenced by her desire to help the claimant. (AR at 19-20).

The Court finds that it was improper for the ALJ to discredit the report on the ground that Plaintiff's mother "stands to gain financially should the [Plaintiff] be found disabled." (AR at 20). While some courts have held that an ALJ may consider a witness' financial interest in the award of benefits in evaluating their credibility,[3] the Ninth Circuit has consistently held that bias cannot be presumed from a familial relationship. *See, e.g., Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999). This

---

[3] *See Buckner v. Apfel,* 213 F.3d 1006, 1013 (8th Cir. 2000); *Rautio v. Bowen*, 862 F.2d 176, 180 (8th Cir. 1988).

11

is because a personal relationship is a necessity for lay witness testimony since it is provided by people "in a position to observe a claimant's symptoms and daily activities." *Dodrill*, 12 F.3d at 918. The ALJ's reasoning that witnesses who live with or support a plaintiff are not credible for reasons of bias cannot be considered legally proper, since the same rationale could be used to reject lay witness testimony in almost every case.

Although the ALJ improperly rejected the report on the basis of Plaintiff's mother's alleged financial interest in Plaintiff's obtaining SSI benefits, the ALJ also provided legitimate reasons for his credibility determination. First, the ALJ pointed out inconsistencies between Plaintiff's mother's report and the evidence in the record. (AR 19). For example, in December 2005, Plaintiff's mother claimed that Plaintiff was experiencing auditory hallucinations, disorientation, and delusions, and that she had to take care of all of his personal needs. (AR at 19, 74-80). The ALJ noted that, according to a report created only two months prior, in October 2005, Plaintiff was "independent in health care and no mention is made of psychosis." (AR at 19-20, 99). Second, the claims made in the report were not supported by the medical record. Just three months before the report, the consulting psychiatrist observed none of the psychotic symptoms which Plaintiff's mother claimed that Plaintiff displayed, nor found any evidence of psychosis. (AR 19, 175-178).

Where one of the ALJ's several reasons supporting an adverse credibility finding is invalid, the Court applies a harmless error standard. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195-1197 (9th Cir. 2004)). As long as there remains

"substantial evidence supporting the ALJ's conclusions on ... credibility" and the error "does not negate the validity of the ALJ's ultimate [credibility] conclusion," the error is deemed harmless and does not warrant reversal. *Id*. at 1197; *see also Stout v. Comm'r of Soc. Sec. Admin.,* 454 F.3d 1050, 1055 (9th Cir. 2006)(defining harmless error as such error that is "irrelevant to the ALJ's ultimate disability conclusion"). Here, because the ALJ provided specific, legitimate reasons for discrediting the report, any error in improperly considering her supposed financial interest as Plaintiff's mother was harmless. Furthermore, as noted above, because this was a written report, not oral testimony, the ALJ was not even required to address it at all. Therefore, relief is not warranted on this issue.

**E.   The ALJ Properly Developed the Record**

Plaintiff claims that the ALJ failed to properly develop the record because a psychological report dated March 25, 2005 is not included in the administrative record. (Joint Stp. At 15-16). However, the March 25, 2005 report to which Plaintiff refers is in fact included in the record (AR at 34-37). Therefore, no relief is warranted on this issue.

**F.   The ALJ Properly Considered the Type, Dosage, Effectiveness and Side Effects of Plaintiff's Medication**

Plaintiff contends that the ALJ failed to properly consider the side effects of his medication in reaching the disability determination. (Joint Stip. at 17.)  In the "Disability Report - Appeal" form filed on December 15, 2005, Plaintiff claimed the following side effects from his medication: the Wellbutrin caused "tremors" and the Risperdal caused "anxiety." (AR at 77).

However, except for Plaintiff's comments on this single form, Plaintiff's records contain no mention whatsoever of side effects from any medication. In fact, Plaintiff's claims regarding the side effects of Wellbutrin and Risperdal are contradicted in his initial application for SSI benefits on May 9, 2005, in which Plaintiff reported that he experienced no side effects. (AR at 43). Also, during the consultative examination conducted on September 23, 2005, Plaintiff told Dr. Nguyen that the Wellbutrin and Risperdal "calmed him down" and also helped him sleep and concentrate. (AR at 176). More recently, Plaintiff and his mother both testified at the administrative hearing, held on April 12, 2007, that Plaintiff had not been taking any medication for at least seven months prior to the date of the hearing. (AR at 215, 227). Given the lack of evidence of Plaintiff's alleged side effects, as well as conflicting evidence showing no adverse reactions, the ALJ properly considered the side effects of Plaintiff's medication. Thus, no relief is warranted on this issue.

**V.   Conclusion**

For the reasons stated above, the decision of the Social Security Commissioner is **AFFIRMED**.

Dated: October 9, 2008

_____
Marc L. Goldman
United States Magistrate Judge